**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Honorable Marcia S. Krieger

Case No. 11-cv-01482-MSK-CBS

RANDALL RADER,

    Plaintiff,

v.

ELECTRONIC PAYMENT SYSTEMS, LLC,

    Defendant.

_____

**ELECTRONIC PAYMENT SYSTEMS, LLC'S BRIEF IN SUPPORT OF ITS RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED FIRST, SECOND AND FIFTH CLAIMS FOR FAILURE TO STATE CLAIMS**
_____

## ARGUMENT

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to make its "claim for relief… plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007). While "[t]echnical fact pleading is not required… the complaint must still provide enough factual allegations for a court to infer potential victory." *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

    **A. Plaintiff's amended claim under the Wholesale Sales Representative Act is insufficient because plaintiff is not EPS' representative, EPS90 is a service, not a good, and no wholesale sale was involved.**

Plaintiff's claim, as amended, asks the Court to apply Colorado's Wholesale Sales

Representative Act ("the Act") to a transaction to which the legislature never intended it to apply and the parties agreed would not apply. Despite the stringent standard applied to 12(b)(6) motions, even if all the allegations of the amended complaint are accepted as true, plaintiff's claim under the Wholesale Sales Representative Act fails as a matter of law for three separate and independently sufficient reasons: (1) The parties agreed in their written contract that plaintiff was not a "representative" of EPS and therefore the Act, which protects only representatives, does not apply; (2) the Act applies only to wholesale sales of goods and EPS90 is a service, not a good; and (3) the "sales" in which plaintiff was involved were sales to the ultimate user of EPS90, the merchant, not wholesale sales, and are therefore not covered by the Act.

### 1. The Act does not apply because the parties contractually agreed plaintiff is not a representative of EPS.

By its express terms the Wholesale Sales Representative Act provides a remedy to a "representative" of a company. In the present case, by contract, plaintiff explicitly agreed with EPS that he is <u>not</u> a representative of EPS. Section 1.9 of the parties Marketing Agreement provides, in relevant part, "Contractor [plaintiff] <u>understands, represents and warrants</u>, <u>they are not</u> an employee, agent, officer, or <u>representative of EPS</u>." (See Marketing Agreement attached as Exhibit A to Complaint, p. 6). Where, as here, the parties have contractually agreed as to the nature of their business relationship, the Court should enforce that agreement. *General Steel Domestic Sales, LLC v. Steelwise, LLC*, 2009 U.S. Dist. LEXIS 4872 (D. Colo. 2009). Since plaintiff has agreed he is not a

representative of EPS, the Act which, by its terms, applies only to representatives does not apply, and cannot form the basis for a claim against EPS.

In his amended complaint, plaintiff has added assertions that "EPS also referred to plaintiff as an "Agent" as well as an Independent Sales Office or by the acronym "ISO". (Amended complaint, Doc. No. 18, para. 15). Plaintiff fails to indicate in what documents, conversations or circumstances it alleges such references appear or were made.  However, since none of the references are part of the parties' contract, they do not and cannot alter the parties' contractual relationship.

It is well settled under Colorado law, that where the parties have entered into a written agreement and the terms of the agreement clearly and unambiguously indicate the intent of the parties, other statements or materials cannot be used to alter what the written document says.   Extrinsic facts can be considered only where a contract is ambiguous. Whether a contract is ambiguous is a question of law.  *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 974 (Colo. 2005). Although the four corners doctrine is not strictly applied in Colorado, intent must be determined "primarily from the language of the contract." *East Ridge* at 974.  Extrinisic evidence of intent can never be used to contradict or change the language of the contract. *Ft. Lyon Canal Co., v. High Plains A&M, LLC,* 167 P.3d 726, 729 (Colo. 2007).

Here, plaintiff alleges extrinsic facts to show that when the parties' contract expressly said plaintiff is not a representative, the parties really intended just the opposite, that he was a representative.  In Section 1.9 plaintiff specifically "understands, represents and warrants" that he is "not [a] representative of EPS."

Plaintiff acknowledges in paragraph 14 of his amended complaint that the parties' contract consists of the Marketing Agreement (Exhibit A to the amended complaint), and the EPS Guidelines (Exhibit B to the amended complaint.)  Nowhere in those two documents is plaintiff ever referred to as an agent or ISO.  Throughout both documents he is referred to as independent contractor or contractor.   Specifically he is not a representative.

Regardless of who or where plaintiff asserts he was referred to as an "Agent" or an "ISO," the documents attached to plaintiff's amended complaint demonstrate that reference is somewhere other than in the parties' clear and unambiguous contract.  Therefore, any other statements about plaintiff's relationship with EPS  cannot be used to modify the clear statement in the contract that plaintiff is not a representative of EPS.  As plaintiff is not a representative, he is not entitled to assert a claim under the Act.

### 2. The Act does not apply because EPS90 is a service, not a good.

As discussed at greater length in the following section, the Wholesale Sales Representative Act ("the Act") does not contain a section expressly defining its terms and there is very little case law from Colorado state or federal courts providing guidance as to the applicability of the Act.  However, the Courts in other states having similar statutes have interpreted the Act as applying only to the sale of goods, not services.  *See Schocker v. Guardian Alarm Co. of Mich.*, 2008 U.S. Dist. LEXIS 59160 (E.D. Mich. Aug. 5, 2008).  The plaintiff in *Guardian Alarm* had a contract to sell security alarm services, including the sale or lease of equipment to facilitate the alarm services.  The court ruled that because the "predominant" purpose of the plaintiff's contract was to sell services,

rather than goods, the Act was not applicable. *See also Grieser v. Design Craftsmen, LLC*, 2010 U.S. Dist. LEXIS 18122 (E.D. Mich. March 2, 2010) (holding where services are sold rather than goods, the Act does not apply).

The present case is remarkably similar to *Guardian Alarm*. Like the alarm service (or the cable service *Guardian Alarm* refers to), plaintiff acknowledges EPS90 is a service that provides 90 day financing for a merchant's customers. To utilize EPS90 service requires the use of certain equipment, including a POS terminal and check imager, similar to the alarm sensors or the cable box referred to in *Guardian Alarm*. The sale or leasing of the equipment here is clearly ancillary to the service. Like the Court in *Guardian Alarm*, the Court here should rule as a matter of law that because EPS's provision of a service predominates, the Act does not apply to plaintiff and his claim is without merit.

That wholesale sales acts only apply to goods, not services is reflected in the decisions of courts in other states, in addition to Colorado. *See Grenemyer v. McFadin*, 2009 U.S. Dist. LEXIS 76230 (D. Colo. Aug. 25, 2009) (women's handbags); *JDB Medical, Inc. v. Sorin Group*, 2008 U.S. Dist. LEXIS 76131 at *7 (D. Colo. June 11, 2008) (cardiac rhythm management devices, such as pacemakers); *DCS Mktg. v. Homer Laughlin China Co.,* 2009 U.S. Dist. LEXIS 110876 (C.D. Cal. Nov. 5, 2008) (china ware); Walters *v. Bloomfield Hills Furniture*, 577 NW2d 206, (Mich. App. 1998) (furniture); *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 1997 U.S. Dist. LEXIS 1163 (D. Kansas 1997)(aluminum die casts); and *Industry to Industry, Inc. v. Hillsman Modular Molding, Inc.*, 644 N.W.2d 236 (Wis. 2002) (plastic parts). This Court should

limit the application of Colorado's Wholesale Sales Act to goods, as other courts have done.

In his amended complaint, plaintiff has added references in several places to the EPS90 as a "product". (See e.g., amended complaint, para. 17). Plaintiff has also added assertions about the equipment that is sold or leased along with the EPS90 service in order to enable the merchant to use the service. (Amended complaint, paras. 17, 20, 21, and 22). Adding such assertions to the complaint does not transform the EPS90 from a service into a product.

The EPS90 by its nature, is clearly a service. It is a service, that on an ongoing basis enables a merchant to sell its products to a customer. It involves the merchant contacting EPS and asking EPS to analyze the check writing history of the customer; then asks EPS to set up periodic payments and transfer of funds between the merchant's account and the customer's account; and then asks EPS on the appointed dates when each of the periodic payments are to be made, to transfer the funds from and to the appropriate accounts. This is the service provided by the EPS90.

The fact that the merchant needs certain equipment in order to utilize the EPS90 service does not change the analysis, as confirmed by the *Gardian Alarm* case, discussed above. The use of imaging devices and communication equipment, such as terminals, in order to facilitate the EPS90 financing service, is no different than the use of detection devices, alarms and communication equipment to provide the alarm protection service in *Gardian Alarm*. The dominant purpose of the EPS90 is to provide a financing service, not to sell terminals or imagers. As plaintiff acknowledges in his amended complaint,

EPS does not sell the equipment. It is supplied by an independent company, unrelated to EPS. (See amended complaint, para. 28). Since the nature of the EPS90 is to provide a service, the Act does not apply.

### 3. The Wholesale Sales Representative Act does not apply where, as here, Plaintiff is involved with retail sales to the ultimate user of EPS90, rather than wholesale sales.

As indicated in the statement of the elements of plaintiff's claim above, plaintiff must prove, *inter alia*, that he is a "wholesale sales representative" under the Act. The Colorado Act does not define the term. Nor is there any Colorado federal or state case that provides a definition. However, the District Court of Colorado has acknowledged that the elements of claims under the Colorado and California Wholesale Representative Acts are "essentially identical." *JDB Medical* at *7. The California Act, after which the Colorado Act appears to be modeled, clarifies the term by defining it as follows:

> Wholesale sales representative" means any person who contracts with a manufacturer, jobber, or distributor for the purpose of soliciting wholesale orders, is compensated, in whole or part, by commission, but shall not include one who places orders or purchases exclusively for his own account for resale and shall not include one who sells or takes orders for the direct sale of products to the ultimate consumer.

Cal. Civ. Code § 1738.12(e).

This definition is instructive in several aspects. First, it confirms the Act applies only to the sale of "products," rather than services, as demonstrated in the previous section. Second, it reiterates what the title of the Act indicates – that it applies only to "wholesale sales." Consistent with this formulation, the definition concludes by specifically stating that it "shall not include" one who sells directly to the ultimate

consumer, i.e. retail sales.

The Courts in California have discussed the Act and the distinction between wholesale sales to which the Act does apply, versus sales to the ultimate consumer, also referred to as retail sales, to which the Act does not apply.  In *Brooks v. Motsenbocker Advanced Devs., Inc.* 2008 U.S. Dist. LEXIS 89882 at * 2-3  (S. D. Cal. Nov. 5, 2008), the Court held that under the plain meaning of the Act, if a person makes a direct sale of products to the ultimate consumer, the person "is not a 'wholesale sales representative,'…"

In *DCS Mktg. v. Homer Laughlin China Co.,* 2009 U.S. Dist. LEXIS 110876 (C.D. Cal. Nov. 10,  2009),  there was a dispute as to whether the plaintiff's sales of the defendant's china ware constituted wholesale sales (to which the Act would apply) or retail sales (to which the Act would not apply).  According to the *DCS Marketing* court, a plaintiff is "only a wholesale sales representative if [she] contracted…for the purpose of soliciting wholesale orders" as distinguished from retail orders.  *Id*. at 10.  After concluding the term "wholesale sale" is not defined by the Act or other California case law, the Court determined that the "key inquiry" is whether plaintiff is "involved in the sale of items for resale purposes or for direct sale purposes." *Id*. The Court concluded that because plaintiff's job was to increase sales through distributors, and not to consumers, plaintiff was involved in wholesale sales.  *Id.*

Here, however, it is undisputed that plaintiff does not work through distributors. Instead he works directly with the ultimate consumers – the merchants, such as Petland. Plaintiff does not offer EPS90 to merchants so the merchants can resell it to their

customers and then the customer can use it with some ultimate consumer. Rather, plaintiff offers EPS90 so merchants can use the service directly in their businesses. The merchant is the ultimate consumer of EPS90 and therefore plaintiff's "sales" of EPS90 to merchants, do not constitute wholesale sales and are not covered by the Act. The California courts have made it clear that by using the phrase "wholesale sales," sales to the ultimate consumer (retail sales) are not covered by the Act. Given the Court's finding in *JDB Medical* that the California and Colorado Acts are "virtually identical," Colorado's use of the phrase "wholesale sales" should be interpreted in the same manner – limiting the Colorado Act to wholesale sales only, and excluding sales to the ultimate user of the product.

Because plaintiff's sale of EPS90 to Petland was for Petland's use, not for resale by Petland, as a matter of law, the plaintiff's actions as alleged in the complaint are not within the scope of the Act. Plaintiff has failed to state a claim under the Act and his first claim should be dismissed.

In his amended complaint, plaintiff added assertions that plaintiff's role was limited to soliciting merchant orders for EPS and that the orders were fulfilled by EPS and CyHawk, not plaintiff. (Amended complaint, paras. 72 and 73.) The issue is not whether plaintiff solicited orders or actually fulfilled those orders. The issue under the Act is the nature of the orders being solicited or fulfilled – were they wholesale orders or were they retail orders? If plaintiff was soliciting orders from an entity that was going to then resell the EPS90 to merchants (the ultimate users) then he might fit within the Act. However, the amended complaint acknowledges that plaintiff solicited orders directly

from the merchants. Therefore the orders he solicited were for retail, not wholesale sales and are not subject to the Act. The *DCS Marketing* case discussed above makes it clear that if the plaintiff is soliciting retail sales, as distinguished from wholesale orders, he is not within the scope of the Act. Therefore, plaintiff's claim under the Act is barred as a matter of law.

### B. **Plaintiff's amended intentional interference with contract claim fails as he would not have been a party to any prospective contract with Petland**

Plaintiff's amendment of count II, changing the claim from an interference with contract claim to an interference with continuing business relations claim, still fails to state a claim upon which relief may be granted.

A plaintiff may not bring a claim for interference with business relations where he would not have been a party to any prospective business contracts. *MDM Group Associates, Inc. v. CX Reinsurance Company Ltd.,* 165 P.3d 882 (Colo. App. 2007). In *MDM Group,* an insurance broker, asserted that an insurance company intentionally interfered with the broker's business relations with insured by improperly handling the insured's claims. *Id. at 885.* In overturning the trial courts judgment in favor of the broker and against the insurance company, the Colorado Court of Appeals held that because the broker would not have been a party to any contracts with the insured and would not have received an economic benefit from the insured, the broker could not recover from the insurance company for interference with the broker and insured's business relationship. *Id.*

First, relying on the well settled law that a defendant cannot be liable for interference with its own contract, the court explained that a defendant cannot be liable for tortuous interference with business relationships where the defendant is to be a party to the expected

contract. Thus, as the insurance company was a party to both the insurance contract with the insured, as well as, the marketing contract with the broker, the insurance company could not be liable for tortuous interference with either of the contracts present. *Id. at 887.*

Second, the Court of Appeals explained that under Colorado law, interference with another's business relation is tortuous "only if there is a reasonable likelihood or reasonable probability that a contract would have resulted." *Id.* at 886 *(citing Klien v. Grynberg,* 44 F.3d 1497 (10th Cir. 1995)). Because insured parties contract directly with the insurance company, but never contracted with the broker, no reasonable likelihood or probability existed that the broker and the insured would enter into a contract. *MDM Group,* 165 P.2d at 886. That the broker and insured did not have a business relationship was further demonstrated by the fact that the insured paid money to the insurance company, and not to the broker. *Id.* at 878. The broker only received payment from the insurance company. *Id.*

The court further explained:

> [An insurance agent] is not a party to a contract with the insured; rather, he helps the company procure and service the [insurance] company's contract with the insured. An [insurance] agent, then, is but an incidental beneficiary to the contract between insured and insurance company. The agent's right to commissions—his economic interest in the insurance contracts—is of no concern to the insured, and solely a matter of contract between the agent and his principal, the insurance company.

*Id.* at 887 (citing *Shrewsbery v. Nat'l Grange Mut. Ins. Co.,* 395 S.E.2d 745, 748 (W. Va. 1990). While the broker was an incidental beneficiary to the contract between the insured and the

insurance company, the broker had no separate business relationship with the insured on which to base an interference claim.

Plaintiff's claim of tortious interference with business relations against EPS fails as a matter of law because his complaint fails to allege facts showing he would have been a party to a business contract with Petland. Plaintiff's assertion he has a "business relationship with Petland" is unsupported by the rest of the complaint. (Complaint, para. 77). Because plaintiff does not and can not allege facts showing that he would have entered a contract with Petland, Plaintiff fails to state a claim that EPS interfered with its business relationship.

Similar to the insurance brokers who helped "procure and service" the insurance company's contracts with insured in *MDM Group*, plaintiff in this case only helps "service and procure" EPS's contracts with merchants. Plaintiff never did and never would enter a contract with any merchants to whom he marketed the EPS90, including Petland. Rather, similar to the broker in *MDM Group,* plaintiff was only an incidental beneficiary to the contract between EPS and EPS' merchants. Plaintiff's right to commissions—his economic interest in the EPS90 contracts—is solely a matter of contract between plaintiff and EPS.

Commission is paid to contractors by EPS, not by the merchants. Only two types of contracts are ever entered into among EPS, EPS' merchants, and EPS' independent contractors. The first, between EPS and its independent contractors, is the marketing agreement. The second, between EPS and its merchants is the Merchant Processing Agreement. There is never a contract between EPS' independent contractors and the merchants procured by the independent contractors. Thus, because plaintiff was not and would not have been a party to any prospective contracts with merchants including Petland, plaintiff SIMPLY DID NOT HAVE A BUSINESS RELATIONSHIP WITH Petland that could be interfered with under Colorado law.

To the extent that plaintiff continues to assert that EPS tortiously interfered with business relations between EPS and plaintiff or EPS and EPS' merchants, such a claim would fail because EPS is a party to both these relationships and thus cannot be liable for interfering with them.

Accordingly, plaintiff fails to state a claim upon which relief may be granted, and count II, its claim of interference with business relations, should be dismissed.

## C.  Plaintiff's unjust enrichment claim is barred by the parties' express contract

Plaintiff cannot assert a valid claim of unjust enrichment in the face of the parties' express agreement – the Marketing Agreement.  "Unjust enrichment is a theory of recovery that involves an *implied* contract at law when the parties either have no express contract or have abrogated it." *JDB Medical at \*24*.  In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Id.*

The subject matter of the parties' Marketing Agreement is how plaintiff is to be compensated for merchants he brings to EPS, such as Petland.  The subject of plaintiff's unjust enrichment claim is the same – his compensation for bringing Petland to EPS.  Because the express contract between plaintiff and EPS covers the same subject matter as plaintiff's unjust enrichment claim, plaintiff must rely on his contract claim and his unjust enrichment claim should be barred.  Plaintiff and EPS negotiated and agreed to the terms regarding plaintiff's compensation in the Marketing Agreement.  It should be enforced by the Court.

In his amended complaint, plaintiff seeks to avoid dismissal by asserting he is only seeking unjust enrichment for residuals after EPS terminated his contract. This is inconsistent with plaintiff's earlier assertions that the contract was not terminated. (See amended complaint, para. 90). Whether it is a breach of contract claim asserting the contract was not terminated and therefore plaintiff is entitled to residuals from Petland sales, or a breach of contract claim asserting EPS improperly terminated it, the contract and therefore plaintiff is entitled to residuals from Petland sales, it is still a breach of contract claim and bars plaintiff's unjust enrichment claim.

## CONCLUSION

For the foregoing reasons Defendants' Motion to Dismiss should be granted, and plaintiff's first, second and fifth claims for relief should be dismissed.

**DATED** this 15th day of September, 2011.

/s/Scotty P. Krob
Scotty P. Krob
Nathan Krob
KROB LAW OFFICE, LLC
8400 E. Prentice Avenue, Penthouse
Greenwood Village CO 80111
Telephone: (303) 694-0099
Facimile: (303) 694-5005
scott@kroblaw.com
nathan@kroblaw.com
**COUNSEL FOR DEFENDANT
ELECTRONIC PAYMENT SYSTEMS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2011, I electronically filed the foregoing Electronic Payment Systems, LLC's brief in support of its motion renewed motion to dismiss plaintiff's amended first, second and fifth claims for failure to state claims with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Steven C. Fuoco - fuocolawgroup@gmail.com

        /s/Scotty P. Krob
Scotty P. Krob