**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge Marcia S. Krieger

Case No. 1:11-cv-01482-MSK-CBS

RANDALL RADER

                Plaintiff,

v.

ELECTRONIC PAYMENT SYSTEMS, LLC

                Defendant.

_____

**DEFENDANT ELECTRONIC PAYMENT SYSTEMS, LLC'S
FIRST AMENDED PARTIAL ANSWER AND COUNTERCLAIMS
IN RESPONSE TO PLAINTIFF'S AMENDED COMPLAINT**

_____

Pursuant to Rule 15, Fed. R. Civ. P., Defendant EPS hereby amends its counterclaims against plaintiff, as set forth below.

Defendant Electronic Payment Systems, LLC ("defendant") previously filed a motion and supporting brief to dismiss plaintiff's first (Wholesale Sales Representative Act), second (interference with contractual relations), and fifth (unjust enrichment) claims, pursuant to Fed. R. Civ. P. 12(b)(6). After plaintiff amended his complaint in an effort to remedy some of the defects in his original complaint, on September 15, 2011, defendant renewed its motion to dismiss plaintiff's first second and fifth claims as set forth in plaintiff's amended complaint. Defendant's motion to dismiss has been fully briefed. As a result of filing its Rule 12(b)(6) motion, defendant's answer and counterclaims are not due until the Court has ruled on the motion. However, the parties are proceeding with discovery. Therefore, to facilitate full discovery and avoid unnecessary duplication, defendant is filing its answer and counterclaims

now, as they relate to plaintiff's claims that are <u>not</u> the subject of the pending motion to dismiss (i.e. plaintiff's third claim asserting breach of contract, and plaintiff's fourth claim asserting breach of good faith and fair dealing). As to those claims, defendant files its response to Plaintiff's Amended Complaint as follows:

**I.    ANSWER TO GENERAL ALLEGATIONS AND THIRD AND FOURTH CLAIM**

1. Defendant denies the allegations contained in paragraph 1 of Plaintiff's Amended Complaint.

2. Defendant denies the allegations contained in paragraph.

3. Defendant lacks sufficient information to admit or deny the allegations contained in Paragraph 3.

4. In response to paragraph 4, defendant denies that it is a corporation, but admits that its company is headquartered in Englewood, Colorado.

5. Defendant admits the allegations contained in paragraph 5.

6. Defendant denies the allegations contained in paragraph 6.

7. Defendant admits the allegations contained in Paragraph 6 that there is diversity between the parties, but disputes the amount that, in good faith, is in controversy exceeds $75,000.

8. Defendant admits venue is proper based upon the Agreement's venue provision.

9. Defendant admits that plaintiff executed the Agreement with defendant and states that as to the remaining allegations the parties agreement speaks for itself.

10. In response to the allegations contained in paragraph 10, the terms of the Agreement speak for themselves.

11. Defendant admits the allegations contained in paragraph 11.

12. Defendant believes the document attached as Exhibit A to the Amended Complaint is a portion of the parties' written agreement. Schedule A refers to a Schedule B, that is not attached.

13. Defendant denies that the document attached as Exhibit B to the Amended Complaint is Defendant's Guidelines.

14. Defendant denies the allegations contained in paragraph 14.

15. Defendant admits the allegations contained in paragraph 15.

16. Defendant admits the allegations contained in paragraph 16, but notes the document is incomplete.

17. Defendant denies several aspects of the allegations contained in paragraph 17, including whether the connection can only be via the internet, whether the connection may be to Merrick Bank, whether software executes a series of scheduled electronic money transactions, and that the EPS 90 service is a "merchant point of sale computerized check imaging terminal."

18. Defendant denies the allegations contained in paragraph 18, as they inaccurately describe the flow of funds.

19. Defendant denies the allegations contained in paragraph 19.

20. With regard to the allegations contained in paragraph 20, defendant asserts that the RDM check imaging terminal is not part of the EPS 90 service, but rather is a compatible imaging terminal that may be used with the EPS 90 service.

21. With regard to the allegations contained in paragraph 21, defendant asserts that the Nurit 8320 payment terminal hardware with data entry keyboard is not part of the EPS 90 service, but rather is a compatible terminal that may be used with the EPS 90 software.

22. With regard to the allegations contained in paragraph 22, defendant denies that

the hardware terminals are a part of the EPS 90 service. Defendant admits that the attached Installation guide shows how to install the EPS 90 service to a merchant's terminal.

23. With regard to the allegations contained in paragraph 23, defendant admits that plaintiff forwarded completed Merchant Application and Processing Agreement, forms to defendant for two Petland stores. Plaintiff also submitted forms from other services providers, such as the leasing company, in connection with the two Petland stores. Defendant does not believe plaintiff solicited any merchants other than the two individual Petland stores. Defendant does not believe any of the forms involved carbons, as alleged by plaintiff.

24. With regard to the allegations contained in paragraph 24, defendant admits Exhibit H, attached to Plaintiff's Amended Complaint, is a true and correct copy of one iteration of the EPS Application and Processing Agreement form.

25. With regard to the allegations contained in paragraph 25, the terms of the Agreement speak for themselves.

26. With regard to the allegations contained in paragraph 26, defendant admits that it charges an annual fee. Defendant denies it assesses set up fees, registration fees or encryption fees, though plaintiff may have charged such fees to the two Petland stores plaintiff solicited.

27. In response to the allegations contained in paragraph 27, defendant states that with regard to all checks that actually clear the ACH system, defendant admits it retains a small percentage of the checks, but denies they were run "through a [sic] EPS 90 check imaging terminal."

28. Defendant denies the allegations contained in paragraph 28.

29. With regard to the allegations contained in paragraph 29, defendant states that the document identified speaks for itself, though it is not defendant's document.

30.     With regard to the allegations contained in paragraph 30, defendant states that the document identified speaks for itself and notes that the vendor of the equipment that is the subject of the Cyhawk Lease Agreement may be defendant or another entity, such as the independent contractor/agent, like plaintiff.

31.     Defendant denies the allegations contained in paragraph 31.

32.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 32, as Petland has stores in various locations and defendant entered into contracts with the individual stores, rather than with some headquartered office.

33.     With regard to the allegations contained in paragraph 33, defendant admits that Petland, Inc. corporate and franchise stores are generally in the business of pet and pet supplies retail sales, however, defendant lacks sufficient information to admit or deny the number of total Petland stores, as well as, where each store is located.  In addition defendant notes that it cannot support or provide services to stores located outside the United States.

34.     With regard to the allegations contained in paragraph 34, defendant believes that in September 2009 Petland did not use the EPS 90 service in any of its stores, nor had any Petland stores conducted business with defendant before under a Petland name.  However, other Petland stores have been solicited by other independent contractors/agents.

35.     With regard to the allegations contained in paragraph 35, defendant admits that the Petland franchise store owner in Columbus, Ohio wanted the EPS 90 service in his store, but lacks sufficient information to admit or deny the circumstances of his interest.

36.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 36.

37.     Defendant lacks sufficient information to admit or deny the allegations contained

in paragraph 37.

38. With regard to the allegations contained in paragraph 38, defendant lacks sufficient information to admit or deny that defendant or plaintiff were granted corporate approved vendor status, but notes defendant has never seen any documentation evidencing such approval.

39. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 39.

40. Defendant admits the allegations contained in paragraph 40 and notes that such forms included defendant's forms, as well as forms of other service providers such as the leasing company.

41. Defendant admits the allegations contained in paragraph 41 as they relate to forms submitted in connection with a single Petland store.

42. With regard to the allegations contained in paragraph 42, defendant admits that it received signed Merchant Application and Processing Agreements on or around October 12, 2009, for two Petland stores. Defendant lacks sufficient information to admit or deny whether plaintiff acted in a timely manner. Defendant denies that the acceptance "of Petland" was involved in these transactions. These applications applied only to two specific stores and whether defendant would accept those two specific merchants, not Petland generally.

43. With regard to the allegations contained in paragraph 43, defendant denies that it added "Petland" to defendant's "Merchant Portfolio." Defendant admits that on or shortly after October 14, 2009, defendant accepted Merchant Application and Processing Agreements from two Petland stores and that both of the individual stores were added to defendant's "Merchant Portfolio."

44. Defendant denies the allegations contained in paragraph 44.

45. The allegations contained in paragraph 45 are unclear. However, defendant admits that prior to November 1, 2009, the Petland stores in Chillicothe and Columbus began using the EPS90 service.

46. Defendant denies the allegations contained in paragraph 46. Defendant asserts that plaintiff did not procure "Petland" for defendant's "Merchant Portfolio."

47. In response to the allegations contained in paragraph 47, defendant states that not all of the amounts identified by plaintiff were commission for the EPS 90 service, as part of the funds related to the equipment lease agreement, which was a separate transaction. In addition, defendant notes that the terminals involved were not "EPS 90 terminals, but rather they were terminals that are compatible with the EPS 90 service.

48. Defendant admits the allegations contained in paragraph 48.

49. Defendant denies the allegations contained in paragraph 49. The $274.50 payment was for all use of the EPS 90 service by the two Ohio Petland stores.

50. Defendant denies the allegations contained in paragraph 50.

51. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 51.

52. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 52.

53. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 53.

54. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 54.

55. Defendant denies the allegations contained in paragraph 55. The $333.50 payment was for all use of the EPS 90 service by the two Ohio Petland stores.

56. With regard to the allegations contained in paragraph 56, defendant paid no compensation to plaintiff as plaintiff was not responsible for the solicitation and subsequent sale to the Petland store located in Overland Park, Kansas.

57. With regard to the allegations contained in paragraph57, defendant does not dispute that plaintiff chose not to participate, but defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph 57, as Greg White is no longer employed by defendant.

58. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 58.

59. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 59, but notes that the EPS 90 service is never provided to a merchant as a test case.

60. With regard to the allegations contained in paragraph 60, defendant admits Greg White received an e-mail from plaintiff on February 3, 2010. The e-mail speaks for itself.

61. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 61, as Greg White is no longer employed by defendant.

62. With regard to the allegations contained in paragraph 62, defendant admits John Dorsey received e-mails from plaintiff. Defendant lacks sufficient information to admit or deny whether plaintiff telephoned Greg White, as Greg White is no longer employed by defendant.

63. Defendant admits the allegations contained in paragraph 63.

64. Defendant admits the allegations contained in paragraph 64.

65. With regard to the allegations contained in paragraph 65, defendant admits that

John Dorsey received an e-mail from plaintiff on March 28, 2010. The contents of the e-mail speaks for themselves.

66. Defendant admits that John Dorsey sent an e-mail to plaintiff on March 31, 2010. The contents of the e-mail speak for themselves.

67. Defendant denies the allegations contained in paragraph 67.

68. Defendant denies the allegations contained in paragraph 68, and notes that at the time plaintiff made the allegations contained in paragraph 68 he knew they were false and that defendant provided service to, at most, 37 Petland stores.

69. With regard to the allegations contained in paragraph 69, defendant admits John Dorsey received a letter dated April 29, 2010, from plaintiff. The contents of the letter speak for themselves.

70. With regard to the allegations contained in paragraph 70, defendant admits John Dorsey received the letter, however, defendant denies that plaintiff was or is entitled to any payment.

71. Defendant denies the allegations contained in paragraph 71. A response has been provided to plaintiff.

72. As the court has not yet ruled on defendant's motion to dismiss the claim asserted in paragraphs 72-76 of Plaintiff's Amended Complaint, defendant does not address the claim here. To the extent this document is construed as an answer to such claims, defendant denies all allegations.

73.

74.

75.

76.

77.     As the court has not yet ruled on defendant's motion to dismiss the claim asserted in paragraphs 77-88 of Plaintiff's Amended Complaint, defendant does not address them here. To the extent this document is construed as an answer to such claims, defendant denies all allegations.

78.

79.

80.

81.

82.

83.

84.

85.

86.

87.

88.

89.     Defendant denies the allegations contained in paragraph 89.

90.     With regard to the allegations contained in paragraph 90, defendant admits it has never given plaintiff written notice of termination, but denies that plaintiff has not been properly notified.

91.     Defendant denies the allegations contained in paragraph 91.

92.     Defendant denies the allegations contained in paragraph 92.

93.     In response to paragraph 93, the terms of the Agreement speak for themselves.

94. Defendant denies the allegations contained in paragraph 94.

95. In response to paragraph 95, the terms of the Agreement speak for themselves.

96. Defendant denies the allegations contained in paragraph 96.

97. As the court has not yet ruled on defendant's motion to dismiss the claim asserted in paragraphs 97-98 of Plaintiff's Amended Complaint, defendant does not address them here. To the extent this document is construed as an answer to such claims, defendant denies all allegations.

98.

Defendant denies that plaintiff is entitled to any relief. All allegations of the complaint not specifically admitted by defendant are denied.

## AFFIRMATIVE DEFENSES

As partial affirmative defenses relating to those portions of plaintiff's amended complaint that are being responded to in this pleading, defendant states as follows:

1. As more specifically set forth in defendant's pending motion to dismiss, defendant asserts that plaintiff's complaint fails to state claims for which relief may be granted.

2. Plaintiff's claims are barred by the doctrines of waiver, laches, and/or estoppel.

3. Plaintiff failed to mitigate any damages he may have suffered, though defendant expressly denies plaintiff suffered any damages.

4. To the extent plaintiff's claims sound in tort, they are barred by the economic loss doctrine.

5. To the extent the plaintiff asserts claims based in equity or equitable relief, plaintiff's claims are barred by the doctrine of unclean hands, as plaintiff has acted in a dilatory and bad faith manner and has failed to do equity.

6. Plaintiff's claim for breach of contract is barred because plaintiff has failed to substantially perform his obligations, including but not limited to, failing to continue to market defendant's services, failing to provide service to the merchants with whom he was involved, and disclosing defendant's rates and fees as well as other materials protected by confidentiality provisions in the parties' agreement.

7. Plaintiff's claim for breach of contract fails for lack of consideration.

8. The injuries and damages claimed by plaintiff resulted from plaintiff's own conduct so that plaintiff's claims are barred, in whole or in part, by the comparative negligence, fault, or responsibility of causation attributed to plaintiff.

9. Defendant reserves the right to assert additional affirmative defenses as they may become known.

## COUNTERCLAIMS

As counterclaims against plaintiff, defendant asserts as follows:

1. Plaintiff is an individual and a citizen of Ohio.

2. Defendant is a Colorado limited liability company, with both of its members residing in and being citizens of Colorado.

3. Plaintiff has voluntarily submitted himself to the jurisdiction of the Court and venue is proper as to plaintiff, as he initiated this lawsuit in this Court.

4. In addition, in their written contract, the parties agreed that this court has jurisdiction over disputes and that venue is proper. Furthermore, the counterclaims asserted herein are directly related to the claims set forth in the amended complaint and are part of the same controversy between the parties and arise out of the same operative facts, giving the Court jurisdiction over the counterclaims.

**First Counterclaim for Relief – Breach of Contract**

5. On or about August 4, 2009, the parties entered into the Marketing Agreement, a copy of which, in part, is attached to the complaint.

6. The definition section of the Marketing Agreement defines an "Eligible Merchant", as *inter alia*, a merchant that "is solicited by Contractor to participate in the Processing Service."

7. Pursuant to the provisions of the Marketing Agreement, Contractor is only entitled to claim compensation for Eligible Merchants, that is, merchants that were actually solicited by Contractor.

8. At most, plaintiff solicited two merchants, Petland Town and Country and Petland Chilocothe.

9. Plaintiff breached the Marketing Agreement by seeking compensation for merchants he never solicited, or even contacted, including but not limited to Petland stores who were solicited by other EPS independent contractors.

10. Sections 9 and 10 of the Marketing Agreement obligated plaintiff not to disclose certain confidential and trade secret information contained in the Agreement, including *inter alia*, rates defendant charges for its services.

11. All of the participants in the deferred presentment, check guarantee, and bank card processing industry in which the parties are engaged, operate based on very small percentages of very large volumes of transactions.

12. The competition regarding rates among entities such as defendant, known as Independent Sales' Organizations (ISOs), is extreme.

13. Plaintiff breached his duty to keep defendant's rates and other information confidential by filing his complaint with the parties' Marketing Agreement, including the applicable rates, attached and not under seal.

14. In addition, plaintiff was under an obligation to continue to market defendant's products, and to provide ongoing service to those merchants he solicited and for which he seeks to recover residuals.

15. The Definition section of the Marketing Agreement specifically defines a contractor who is in "Good Standing" as one who is in compliance with all representations…sections, covenants and provisions of this Agreement and <u>providing proper levels of support and service to Merchants provided to EPS.</u> (emphasis added)

16. Plaintiff breached his contract by failing to provide ongoing customer support to the merchants in connection with which he now seeks to claim residuals.

17. Pursuant to the provisions of Section 5, the initial term of the Marketing Agreement was for three years commencing August 4th 2009 and continuing until August 4, 2012.

18. Pursuant to the provisions of Section 1., plaintiff was obligated to, *inter alia*, "assist EPS in marketing and selling the Processing Service by soliciting potential Merchants…" throughout the term of the lease.

19. Under Section 1.3 of the Marketing Agreement, plaintiff was obligated throughout the term of the Marketing Agreement, to market and sell the Processing Service for EPS, make presentations of the Processing Service, and other related services to potential Merchants.

20. Although it appears plaintiff made some efforts to market and sell the Processing Service and solicited merchants during October 2009, for the remaining two years and 10 months of the term of the Marketing Agreement, plaintiff has failed to market the EPS Processing Service or make a single presentation of the Processing Service to any merchant, or to solicit a single merchant to use such service, in breach of the Marketing Agreement.

21. Section 1.5 of the Marketing Agreement obligated plaintiff to "act honestly and in good faith in all dealings."

22. Section 7.1 of the Marketing Agreement obligated plaintiff to "not conceal any material facts from the Merchant or prospective Merchant."

23. Section 7.4 prohibited plaintiff from engaging in "any fraudulent or deceptive acts or practices in the course of performing their duties" under the contract.

24. According to the Director of Finance of Petland Corp, Lisa Johnson, she expressed to plaintiff that she was leery of EPS90 type programs, due to a bad experience Petland had previously had with such a service.

25. Ms. Johnson's concerns included but were not limited to whether all checks were guaranteed, or if not, under what circumstances checks were guaranteed, and whether there were other limitations to the EPS90 service.

26. Plaintiff made the presentation to Ms. Johnson of the EPS90 service and what it did.

27. Ms. Johnson relied on plaintiff's representation of what the EPS90 service did and what limitations, if any, there were on checks guaranteed under the program.

28. Despite Ms. Johnson's expression of these concerns, plaintiff failed to disclose to Ms. Johnson *inter alia*, (1) that not all checks were guaranteed, but only those accepted by the

merchant after fully complying with all conditions of the EPS90 service, (2) that Not Sufficient Funds (NFS) and Stop Payment checks were not guaranteed, and (3) that there was a 5% limitation on bad checks that would be guaranteed under the program.

29. Had plaintiff disclosed the limitations of the EPS90 program from the outset to Ms. Johnson, Petland would not have endorsed use of the EPS90 in its corporate or franchise stores.

30. When Ms. Johnson subsequently learned the correct information regarding the EPS90 service, Petland withdrew its endorsement of the EPS90 as a strategic provider service.

31. As a result of Petland corporate's withdrawal of its endorsement of the EPS90 as a strategic provider service, the EPS90 was withdrawn from multiple Petland corporate stores.

32. As a result of Petland corporate's withdrawal of its endorsement of the EPS90 service as a strategic provider, multiple Petland franchise stores cancelled their use of the eEPS 90 service.

33. As a result of Petland corporate's withdrawal of its endorsement of the EPS90 service, EPS was deprived of the opportunity to solicit additional Petland stores to use the EPS90 service.

34. Under the provisions of Section 1.7 of the Marketing Agreement, the parties expressly agreed that plaintiff had "no authority whatsoever (I) to bind EPS …to any contract or any agreement or to incur any obligation on behalf of EPS".

35. Plaintiff breached Section 1.7 of the Marketing Agreement by representing to Petland that he had the authority to arrange for a roll out of the EPS90 service to all Petland stores within Ohio, or perhaps even throughout the United States.

36. Section 18(d) of the Marketing Agreement specifically provides that if more than one Contractor claims credit for soliciting a merchant and bringing a merchant to EPS, "EPS shall determine in its sole discretion, which approved Contractor shall receive compensation therefor."

37. Plaintiff breached Section 18(d) by claiming compensation for multiple Petland stores that were solicited and brought to EPS by other individual contractors, even after EPS determined that the other Contractor claiming such stores was responsible for bringing the merchant to EPS.

38. Schedule A, which governs the compensation owed to plaintiff provides, in part that plaintiff must adhere to all provisions of the Marketing Agreement for thirty-six months before he is vested in a residual stream of income.

39. Plaintiff breached Schedule A by claiming a right to residual income before the passage of the required thirty-six months.

40. Under Section 1.11 of the Marketing Agreement, plaintiff specifically agreed that if he failed to comply with any of his obligations, such failure constituted a material breach of the Agreement.

41. As a proximate result of plaintiff's breaches of the Marketing Agreement, defendant has been damaged in an amount that has not yet been ascertained, including, *inter alia*, the loss of a substantial amount of the Petland stores it previously serviced and loss of the opportunity to obtain additional Petland stores.

### Second Counterclaim for Relief – Libel

42. The allegations contained in paragraphs 1. through 41. are incorporated herein by reference.

43. On or about August 29, 2011 plaintiff, through his counsel, posted information regarding the above-captioned case on an internet website.

44. The name of the website on which plaintiff posted information relating to defendant is "ripoff report.com"

45. The posting of the information on the website constituted publication.

46. At the time of the posting, defendant was a private entity and the statement pertained to a private matter, specifically the above-captioned lawsuit.

47. Although the information posted by plaintiff's counsel is accurate and simply references the pending lawsuit, posting the information relating to defendant on a website titled "ripoffreport.com" is defamatory on its face, constituting libel per se.

48. In the alternative, the posting was about plaintiff and was defamatory, constituting libel per quod.

49. In addition, on September 8, 2011, plaintiff's counsel sent an e-mail to Ms. Johnson indicating to Ms. Johnson that EPS' president, Mr. Dorsey, had made false statements regarding Petland.

50. E-mailing the statement to Ms. Johnson constituted publication.

51. At the time of plaintiff's counsel's statement, defendant was a private entity and the statement pertained to a private matter, specifically the above-captioned lawsuit.

52. The information in plaintiff's counsel's e-mail was false and defamatory, constituting libel per quod.

53. As a result of the libel by plaintiff, defendant suffered general damages and also suffered special damages including but not limited to loss of existing and future business with Petland. Defendant is in the process of quantifying its damages.

## PRAYER FOR RELIEF

As a proximate result of the foregoing acts and omissions by plaintiff and the acts of defendant, defendant has been injured and prays that judgment be entered for defendant and against plaintiff as follows:

1. For the actual and consequential damages, including special damages, suffered by defendant, in an amount determined at trial.

2. Dismissing and denying with prejudice all of plaintiff's claims.

3. For such other relief as the Court deems appropriate.

**DATED** this 30th day of March, 2012.

/s/Scotty P. Krob
Scotty P. Krob
KROB LAW OFFICE, LLC
8400 E. Prentice Avenue, Penthouse
Greenwood Village CO 80111
Telephone: (303) 694-0099
Facsimile: (303) 694-5005
scott@kroblaw.com
**COUNSEL FOR DEFENDANT
ELECTRONIC PAYMENT SYSTEMS, LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that on March 30, 2012, I electronically filed the foregoing Defendant Electronic Payment Systems, LLC's First Amended Partial Answer and Counterclaims in Response to Plaintiff's Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Steven C. Fuoco – sfuoco@sbcglobal.net
Raymond W. Martin – martin@wtotrial.com

                                        /s/Scotty P. Krob
                                        Scotty P. Krob