**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge Marcia S. Krieger

Case No. 1:11-cv-01482-MSK-CBS

RANDALL RADER

        Plaintiff,

v.

ELECTRONIC PAYMENT SYSTEMS, LLC

        Defendant.

_____

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

**COMES NOW** Defendant Electronic Payment Systems, LLC (EPS), who moves for partial summary judgment on claims 1 ("Wholesale Sales Representative Act"), 2 ("Interference with Business Relations"), and 5 ("Unjust Enrichment") in the Amended Complaint (#18) pursuant to Fed R. Civ. P. 56.

Defendant's counsel discussed the grounds for this motion and the relief requested with counsel for the Plaintiff on August 1, 2012. Plaintiff's counsel opposes the relief requested herein.

Some of EPS' arguments presented in this motion have been previously presented in EPS' motion to dismiss, which has been fully briefed and is pending. (See #'s 21, 22, and 71). The undisputed facts ascertained through discovery provide further support for EPS' arguments as set forth below.

# CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

## A. Defendant is entitled to Summary Judgment on Claim 1: Wholesale Sales Representative Act

### 1. Burden of proof and elements

The Plaintiff's claim under the Wholesales Sales Representative Act, C.R.S. §§ 12-66-101 et seq., requires Plaintiff to establish by a preponderance of the evidence that: (i) EPS is a distributor, jobber, or manufacturer; (ii) who knowingly; (iii) failed to pay commissions; (iv) to plaintiff as a wholesale sales representative; (v) as provided in a written sales agreement. *JDB Medical, Inc. v. The Sorin Group,* 2008 U.S. Dist. LEXIS 76131, *7 (D. Colo. 2008).

### 2. Elements that cannot be proven by Plaintiff

Element 4: The Plaintiff is not a "wholesale sales representative" as required under the Colorado Wholesale Sales Representatives Act, because the Act applies only to the sale of goods and the EPS90 is a service, not a good.[1]

    A. The Wholesale Sales Representative Act applies only to the sale of goods, not services. Although Colorado courts have not specifically addressed the issue, other states examining similar acts have held they apply to goods, but not services. *See Shocker v. Guardian Alarm Co. of Mich.,* 2008 U.S. Dist. LEXIS 59160, at *43(E.D.

---

[1] The cases unanimously hold that Wholesale Sales Representative Acts, whether in Colorado or elsewhere, apply only to goods and not services, as discussed above. The cases are less clear whether this fundamental rule regarding the applicability of the Act relates to the first element (that plaintiff show EPS was a distributor, jobber, or manufacturer) or the fourth element (that plaintiff was a wholesale sales representative). Here, EPS has addressed it as relating to the fourth element.

Mich. Aug 5, 2008). The Courts in Colorado as well as other states having similar statutes have applied the Act only to the sale of goods, not services. *See Grenemyer v. McFadin,* 2009 U.S. Dist. LEXIS 76230 (D. Colo. Aug. 25, 2009) (women's handbags); *JDB Medical, Inc. v. Sorin Group,* 2008 U.S. Dist. LEXIS 76131 at *7 (D. Colo. June 11, 2008) (cardiac rhythm management devices, such as pacemakers); *DCS Mktg. v. Homer Laughlin China Co.,* 2009 U.S. Dist. LEXIS 110876 (C.D. Cal. Nov. 5, 2008) (china ware); Walters *v. Bloomfield Hills Furniture,* 577 N.W.2d 206, (Mich. App. 1998) (furniture); *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.,* 1997 U.S. Dist. LEXIS 1163 (D. Kansas 1997) (aluminum die casts); and *Industry to Industry, Inc. v. Hillsman Modular Molding, Inc.,* 644 N.W.2d 236 (Wis. 2002) (plastic parts).

B. When a transaction involves providing a service and also providing goods needed to use that service, the Court should look to the predominant purpose of the transaction. *Guardian Alarm* involved the sale of security alarm services, including the sale or lease of equipment to facilitate the alarm services. The Court ruled that because the "predominant purpose" of the contract was to sell security services, rather than goods, the Act did not apply. *Guardian Alarm,* 2008 U.S. Dist. LEXIS 59160 at *41-43. The fact that equipment needed in order to use the alarm service was also sold as part of the transaction did not alter the "predominant purpose" of providing a service. *Id.*

> A comparable example is the sale or rental of digital converters for cable service subscribers to allow access to high definition channels on analog televisions.

*Id.* at 41-42.

C. The undisputed facts establish that the predominant purpose of the

EPS90 is to provide a payment guarantee and deferred presentment service via Automated Clearing House ("ACH") transactions, not a good.

The purpose of the EPS90 is to (1) guarantee payments and (2) facilitate the sale of large ticket items to customers using a series of deferred presentments over a period of time. *Anthony Maley's Affidavit*, attached hereto as Exhibit A at ¶ 3 and *Plaintiff's Deposition,* attached hereto as Exhibit B, at 22/23-23/12.

Guaranteeing payments is a service. The merchant who utilizes the EPS90 service must comply with the terms and conditions of the service, such as obtaining the required proof of identification, etc. If the merchant complies, then EPS will guarantee payment. There is no good that is generated as a result of this payment guarantee service. Ex. A at ¶ 4.

The deferred presentment aspect of the EPS90 is a service. Again, the merchant must comply with the requirements of the EPS90. EPS then converts each of a series of checks into electronic transactions using the Automated Clearing House (ACH) system, and then, on each of the agreed upon dates, EPS presents the electronic transaction to the ACH system and the funds are transferred from the customer's bank account to EPS and, in turn, the merchant's account. Ex. A at ¶ 4. Again, there is no good that is created. It is strictly a deferred presentment service provided by EPS.

Although there may be an ancillary sale or lease of equipment (specifically a check imager and a point of sale terminal) to the merchant who uses the EPS90 service, the equipment is used solely to transmit the check image and other information from the merchant to EPS so EPS can provide the payment guarantee or deferred presentment

service.[2]  Ex. A at ¶ 5.  The check imager and point of sale terminal are necessary to facilitate the EPS90 service, just as the camera and other transmitting equipment facilitated the security system service in *Gaurdian Alarm*.  The equipment involvement does not change the fact that the predominant purpose of the EPS90 is to provide a payment guarantee and deferred presentment service to merchants, not a good.  Therefore the sale of the EPS90 service is not within the scope of the Act.

        D.      The fees associated with the EPS90 are not subject to sales tax, further demonstrating the EPS90 is a service, not a good.

Colorado law requires that sales tax be collected for the sale of goods, but not services (other than certain specific services not involved here). C.R.S. § 39-26-102. The merchant agreements for the two stores the plaintiff solicited are Petland Town and Country Merchant Agreement, attached as Exhibit C and Petland Chillicothe Merchant Agreement attached as Exhibit D.  The fees associated with the EPS90 are listed on the second page of each merchant agreement under the heading "Pricing Schedule EPS90". The EPS90 fees consist of the following:

▪ Registration and encryption fee:   This one time fee is for the services of downloading the necessary software into the merchant's terminal and check imager and registering the merchant's terminal on EPS' system.

---

[2] In most instances the equipment is provided through a third party lease, sometimes with EPS as the vendor to the leasing company.  Ex. A at ¶ 5.

After the installation is completed the merchant is charged the following amounts monthly in connection with the EPS90, each of which is for a service and none of which result in the production of some type of good:

- % per check: This is the fee charged for EPS providing the EPS90 service and assuming the risk of payments that fall within the guarantee.
- Trans. Fee:  This is the fee charged for processing the transaction.
   This processing is a service, and does create a good.
- Admin Fee: This is the fee for EPS' ongoing administration and updating of the EPS90.
   Administration is a service, not a good.
- Monthly Minimum:  This is the fee EPS charges to those merchants who do not have more than the required minimum level of activity in a given month.  This is a service availability fee and not a good.
- 1st check fee is the fee charged to set up the series of ACH transactions in the system.  It is for a part of the service and does not involve a good.  The foregoing fees and their purposes are addressed in Mr. Maley's affidavit. Ex. A at ¶ 6.  See also Ex. C, at 2 and Ex. D, at 2.

No sales tax is added to any of the monthly fees charged to merchants for the EPS90, which is consistent with the conclusion that the EPS90 is a service, not goods. Ex. A at ¶ 6.

Element 4:   The plaintiff was not a "wholesale sales representative" because plaintiff was involved in retail sale, not wholesale, sale of the EPS90.

   A. The Wholesale Sales Act only applies to wholesale sales, not retail sales.

The Court in *Grenemyer v. McFadin*, 2009 U.S. Dist. LEXIS 76230 at * 2(D. Colo. 2009) held the Wholesale Sales Representative Act is "a provision allowing special remedies in actions by a <u>wholesale sales</u> representative" (emphasis added). Furthermore, the plain language of the Wholesale Sales Representative Act limits recovery to <u>wholesale sales</u> representatives, rather than retail sales representatives. C.R.S. § 12-66-103.

      B.      Wholesale sales are sales made to others for resale, while retail sales are those sales made to the user.

The phrase "wholesale sales representative" is not defined in the Colorado Wholesale Sales Representative Act. However, the analytically critical part of the phrase, "wholesale sale" is defined in other Colorado statutes. The Colorado sales and use tax statute provides:

> (19) "Wholesale sale" means a sale by wholesalers to retail merchants, jobbers, dealers, or other wholesalers <u>for resale</u> and does not include a sale by wholesalers to users or consumers not for resale, and the latter sales shall be deemed retail sales and subject to the provisions of this article...
> C.R.S. § 39-26-102(18). (emphasis added)

The 10th Circuit has held:

> [w]hile there is no *per se* rule of statutory interpretation that identical words used in different statutes are intended to have the same meaning, the courts will nevertheless look at a statute's relationship to other statutes to determine Congress's intent.

*Hackwell v. U.S.,* 491 F.3d 1229, 1235 (10th Cir. Colo. 2007).

Defining wholesale sales as the sale of goods intended for resale, rather than for use is consistent with decisions from other states involving similar Acts. For example, the Colorado Act is modeled after the California Act and this Court has acknowledged

each contain "essentially identical" elements. *JDB Medical, Inc. v. Sorin Group,* 2008 U.S. Dist. LEXIS 76131 at *7 (D. Colo. 2008). The U.S. District Court for the Central District of California held in *DCS Mktg. v. Homer Laughlin China Co.*, 2009 U.S. Dist. LEXIS 110876 (C.D. Cal. Nov. 10, 2009), the "key inquiry" is whether plaintiff is "involved in the sale of items for resale purposes or for direct sale purposes." *Id.*

      C.      The undisputed facts show plaintiff was involved in the retail sale of the EPS90, not wholesale sales, because the merchant is the end user of EPS90.

Merchants use the EPS90 directly in their particular business. The EPS90 is not an item that a merchant can put on its shelves to resell to consumers. The merchant is the end user and ultimate consumer of the EPS90. Therefore plaintiff's "sales" of EPS90 to the Petland stores, constituted retail sales, not wholesale sales. Plaintiff's sale of EPS90 to the Petland stores was for the store's use, not for resale by the store, and therefore, as a matter of law, plaintiff's actions as alleged in the complaint are not within the scope of the Wholesale Sales Act. Ex. A, at ¶ 3, 4, 7.

**B.    Defendants are entitled to Summary Judgment on Claim 2: Interference with Business Relations**

      1.      <u>Burden of proof and elements:</u>

The Plaintiff's claim of interference with business relations requires plaintiff to establish by a preponderance of the evidence that: (i) EPS interfered with plaintiff's business relations with a third party; such interference was (ii) intentional and (iii) improper; and (iv) either (a) induced or otherwise caused a third party not to continue the

relation or (b) prevented the plaintiff from continuing the relationship; (v) resulting in damages to the plaintiff. *Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo. 1995).

        2.        <u>Elements that cannot be proven by the Plaintiff</u>

<u>Element 1</u>: The Plaintiff did not and could not have a contractual relationship with the third party, merchant.

    A.    A plaintiff may not bring a claim for interference with business relations where he would not have been a party to a prospective business contract. *MDM Group Associates, Inc. v. CX Reinsurance Company Ltd.,* 165 P.3d 882 (Colo. App. 2007). In *MDM Group,* an insurance broker, asserted that an insurance company intentionally interfered with the broker's business relations with insured by improperly handling the insured's claims. *Id. at 885.* In overturning the trial court's judgment in favor of the broker and against the insurance company, the Colorado Court of Appeals held that because the broker would not have been a party to any contracts with the insured and would not have received an economic benefit from the insured, the broker could not recover from the insurance company for interference with the broker and insured's business relationship. *Id.* The Court explained that under Colorado law, interference with another's business relation is tortious "only if there is a reasonable likelihood or reasonable probability that a contract would have resulted." *Id.* at 886 *(citing Klien v. Grynberg,* 44 F.3d 1497 (10th Cir. 1995)). Because insured parties contract directly with the insurance company, but never contract with the broker, no reasonable likelihood or probability existed that the broker and the insured would enter into a contract. *MDM Group,* 165 P.2d at 886. That the broker and insured did not have a business relationship

was further demonstrated by the fact that the insured paid money to the insurance company, and not to the broker. *Id.* at 878. The broker only received payment from the insurance company. *Id.*

The court further explained:

> [An insurance agent] is not a party to a contract with the insured; rather, he helps the company procure and service the [insurance] company's contract with the insured. An [insurance] agent, then, is but an incidental beneficiary to the contract between insured and insurance company. The agent's right to commissions—his economic interest in the insurance contracts—is of no concern to the insured, and solely a matter of contract between the agent and his principal, the insurance company.

*Id.* at 887 (citing *Shrewsbery v. Nat'l Grange Mut. Ins. Co.,* 395 S.E.2d 745, 748 (W. Va. 1990). While the broker was an incidental beneficiary to the contract between the insured and the insurance company, the broker had no separate business relationship with the insured on which to base an interference claim.

      B.     Plaintiff cannot establish he would have been a party to a contract with a Petland merchant.

      C.     Plaintiff's claim of tortious interference with business relations fails as a matter of law because he would not have been a party to a business contract with a Petland merchant. He was not and could not be a party to the merchant contracts – which contracts expressly provide they are between EPS, the merchant, and the Bank. (The introductory paragraph of the terms and conditions states: "In consideration of the mutual covenants and agreements herein, Merrick Bank ("Acquirer"), Electronic Payment Systems ("EPS"), acting on behalf and for acquirer, and the undersigned merchant ("Merchant") have agreed as follows:…")  See also, Ex. A at ¶ 6.

Similar to the insurance brokers who helped "procure and service" the insurance company's contracts with the insured in *MDM Group,* plaintiff in this case only helps "procure and service" EPS' contracts with merchants. Plaintiff never did and never could enter into a contract with any merchants to whom he marketed the EPS90, including Petland merchants. Similar to the broker in *MDM Group,* Plaintiff was only an incidental beneficiary to the contract between EPS and EPS' merchants. Plaintiff's right to commissions—his economic interest in the EPS90 contracts—is solely a matter of contract between plaintiff and EPS. Ex. A at ¶ 7.

As in *MDM Group* compensation is paid to independent contractors like plaintiff by EPS, not by the merchants. Only two types of contracts are ever entered into among EPS, EPS' merchants, and EPS' independent contractors. The first, between EPS and its independent contractors, is the Marketing Agreement. The second, between EPS and its merchants is the Merchant Processing Agreement. There is never a contract between EPS' independent contractors and the merchants procured by the independent contractors. Ex. A at ¶ 7. Thus, because plaintiff was not and could not have been a party to any prospective contracts with merchants including Petland, plaintiff simply did not have a business relationship with Petland merchants that could be interfered with under Colorado law.

Element 1: EPS was a party to the business relations with which it allegedly interfered, and plaintiff was not a party to it.

A. To the extent that plaintiff continues to assert that EPS tortiously interfered with business relations between EPS and plaintiff or EPS and EPS' merchants, such a

claim fails because EPS is a party to both these relationships and thus cannot be liable for interfering with them.

B.  In *MDM Group*, the Court noted it is well settled that a defendant cannot be liable for interference with its own contract.  The court explained that a defendant cannot be liable for tortious interference with business relationships where the defendant is to be a party to the expected contract. The Court held that the insurance company in *MDM Group* was a party to both the insurance contract with the insured, as well as, the marketing contract with the broker, and therefore the insurance company could not be liable for tortious interference with either of the contracts. *Id. at 887*.

C.  EPS is a party to the merchant agreements with the Petland stores.  As a result, plaintiff's claim that EPS interfered with the relationship is barred because EPS is or necessarily would be a party to the agreement.

**C.    Defendants are entitled to Summary Judgment on Claim 3: Unjust Enrichment**

1. Burden of proof and elements

The plaintiff has the burden of demonstrating a *prima facie* case. *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093 (Colo. 1982).  To do so the plaintiff must prove: (i) a benefit was conferred on EPS by the plaintiff, (ii) the benefit was appreciated by EPS, (iii) the benefit was accepted by EPS under such circumstances that it would be inequitable for it to be retained without payment. *Id.*

2. The undisputed facts show Plaintiff's unjust enrichment claim is barred by the parties' express contract.

A. A claim of unjust enrichment or implied contract is barred when the parties' have entered into an express contract covering the same matter. Unjust enrichment is a theory of recovery that involves an implied contract at law, sometimes referred to as a quasi-contract, when the parties either have no express contract or have abrogated it.

> In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract.

*JDB Medical* at *24 citing *Bedard v. Martin*, 100 P.3d 584, 591-92 (Colo. App. 2004).

B. The Marketing Agreement covers the same subject matter as plaintiff's unjust enrichment claim. The subject matter of the parties' Marketing Agreement is how plaintiff is to be compensated for merchants he brings to EPS, such as Petland. The subject of plaintiff's unjust enrichment claim is the same – his compensation for bringing Petland merchants to EPS. Because the express contract negotiated by the parties covers the same subject matter as plaintiff's unjust enrichment claim, plaintiff must rely on his contract claim and his unjust enrichment claim is barred.

In the present case, the parties signed a written contract with an integration clause which is an express contract that precludes any recovery under a quasi-contract covering the same matter. *Marketing Agreement between EPS and Randall Rader*, attached hereto as Ex. E, at section 18(a).

C. In his amended complaint, plaintiff seeks to avoid dismissal of this claim by asserting he is only seeking unjust enrichment for residuals after EPS terminated his contract. *Plaintiff's Amended Compliant*, Doc. #18 at ¶ 98. This is inconsistent with

plaintiff's earlier assertions that the contract was not terminated. *Plaintiff's Amended Compliant*, Doc. #18 at ¶ 90.   More importantly, this amendment does not avoid dismissal.  Plaintiff's amended claim is that EPS breached the Marketing Agreement by improperly terminating it and, as a result, he is entitled to compensation for his efforts in bringing Petland to EPS.  Both the issue of whether EPS properly terminated the Marketing Agreement, and the issue of what compensation plaintiff is entitled to receive for soliciting Petland merchants, are governed by the express Marketing Agreement, barring an implied contract/unjust enrichment claim.

## CONCLUSION

**WHEREFORE**, Defendant EPS moves the Court to enter partial summary judgment dismissing Plaintiff's first, second and fifth claims for relief.

**DATED** this 1st day of August, 2012.

 /s/Scotty P. Krob
Scotty P. Krob
KROB LAW OFFICE, LLC
8400 E. Prentice Avenue, Penthouse
Greenwood Village CO 80111
Telephone: (303) 694-0099
Facsimile: (303) 694-5005
scott@kroblaw.com
**COUNSEL FOR DEFENDANT
ELECTRONIC PAYMENT SYSTEMS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2012, I electronically filed the foregoing Defendant's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Steven C. Fuoco - sfuoco@sbcglobal.net

Raymond W. Martin – martin@wtotrial.com

      /s/Scotty P. Krob

Scotty P. Krob